### Richmond

WASHINGTON AND OLD DOMINION RAILWAY V. CARTER.

March 11, 1915.

Absent, Kelly, J.*

1. RAILROADS—*Injury to Mail Clerk—Evidence.*—In an action by a railway mail clerk against a railroad company for a personal injury alleged to have proximately resulted from the failure of the company to equip and maintain a mail car with certain appliances required by the United States Postal authorities, it was not error to admit in evidence the contract between the Post Office Department and the railway company, laws of the United States giving authority to the Postmaster General to require mail cars to be provided with certain safety appliances, a section of the Postal Law and Regulations, and the printed "Specifications for Fixtures for Mail Cars."

2. APPEAL AND ERROR—*Erroneous Admission of Evidence—Harmless Error.*—The improper admission of the declarations or statements of a servant which could not have been prejudicial is not ground for reversal.

3. CARRIERS—*Passengers—Mail Clerk.*—A railway mail clerk in discharge of his duties on a railroad train is a passenger, and it is the duty of the railroad company to exercise the highest degree of care for his safety.

4. NEGLIGENCE—*Dangerous Machinery—Operation in the Dark.*—To attempt to operate a dangerous machine in the dark or without sufficient light is such an open and obvious risk that no prudent person would encounter the peril, and there can be no recovery for the proximate results thereof.

5. RAILROADS—*Injury to Mail Clerk—Removal of Safety Bar—Negligence of Third Person.*—Where the proximate cause of a personal injury to a railway mail clerk was the removal of a safety bar on the car, which removal was effected by an employee of the railroad company sent to clean up the car, who stated to the mail clerk that he intended to remove the bar because it was in his way, but promised the mail clerk

---

*Argued before Judge Kelly's term began.

to replace it, but failed to do so, there can be no recovery against the railroad company. The removal was without authority from the company, and the promise of restoration cannot be relied on to charge the company because not made by one who had authority to act for or in behalf of the company. If the mail clerk saw fit to rely upon the promise of the cleaner, he did so at his peril.

Error to a judgment of the Circuit Court of Fairfax county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*C. E. Nicol, Wilton J. Lambert* and *R. H. Yeatman,* for the plaintiff in error.

*Moore, Barbour, Keith & McCandlish,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The declaration in this case shows that the defendant was the owner of a certain railway running from Rosslyn, in Alexandria county, to Leesburg, in Loudoun county, Virginia. The railroad had formerly been operated by steam, but for a part of its line electricity had been substituted as a motive power. It was a postal road and the plaintiff was a postal clerk. The regulations of the United States Post Office Department provided that mail or postal cars in which the mail and mail clerks were transported, and which had a door on each side through which mail could be discharged at the different stations, should be equipped with a certain iron bar called a catcher and safety bar, the purpose of which was to enable the clerk to take the mail into the car while the train was in motion, and also to enable him to discharge mail therefrom with-

out danger; and the plaintiff was engaged in the performance of this duty at the time of receiving the injuries of which he complains on December 22, 1912.

The declaration charges that it was the duty of the defendant company to use due and proper care that the plaintiff should be safely carried by said road in the performance of his duties as postal clerk, and to see that the mail car in which plaintiff was riding was so provided and operated that the plaintiff, while in the discharge of his duties as mail clerk, without negligence on his part, should not be thrown from the car, and to this end to use due and proper care to see that the iron bar intended and used as a catcher or safety bar, and which operated as a barrier across the door of the car when the same was open, and thereby enabled bags or pouches of mail to be readily discharged at the various stations along the road without danger to the clerk so in charge of the same being thrown or dragged through the door, was properly placed and fastened across the outside of the side door of the mail car. Yet the defendant, not regarding its duty, did not use due and proper care to see that the plaintiff should be safely carried as aforesaid, or that the safety bar and catcher was in proper place, or that the mail car was well and adequately lighted, maintained and operated, but through its servants, agents and employees negligently and carelessly removed said bar from said car, and failed and refused to replace said iron bar in position as aforesaid, and negligently and carelessly failed and refused to illuminate and light, maintain and operate said car as aforesaid, whereby, and as the direct and proximate result of such failure and refusal, when the said mail car in which said plaintiff was riding reached a station called Wiehle, or a

point in close proximity thereto, as the plaintiff opened the said door of the said car, and in the exercise of due care was assuming a proper position for the purpose of delivering the mail, he was jolted, jostled and thrown from the car to and upon the ground with great force, by reason whereof he sustained the injuries for which he sues.

There was a demurrer to this declaration, which we shall not discuss, because the questions arising upon the demurrer may be more satisfactorily disposed of, we think, when we come to the instructions in the case.

Upon the plea of not guilty to this declaration, a great deal of testimony was introduced, with the result that the jury, after being instructed by the court, found a verdict for the plaintiff, upon which judgment was entered, and the case is before us upon a writ of error.

During the progress of the case numerous exceptions were taken to rulings of the court upon the admission of testimony. The first assignment of error is to the admission, over the objection of plaintiff in error, of the contract between the Post Office Department and the Southern Railway Company. The third assignment of error is to the admission in evidence of certain sections of the laws of the United States which give authority to the Postmaster-General to require certain things to be done by the railway company in connection with contracts to be made for the carriage of railway mail under the railway mail service. The fourth assignment is to the admission of section 1179 of the postal laws and regulations. The fifth is to the same effect. The sixth is to the admission in evidence of section 21 of paragraph A, of a pamphlet issued by the Post Office Department, entitled "Specifications for Fixtures for Mail Cars."

We find no error in the rulings adverted to, and the several assignments of error are overruled.

The seventh assignment of error was to the admission of a conversation between the plaintiff and an employee of the Washington and Old Dominion Railway, which was objected to upon the ground that the statements made were not a part of the *res gestae,* and that as admissions they did not bind the defendant company for want of authority on the part of the employee to make them. Strictly speaking, it may be that the evidence should not have been admitted, but its effect could not have been prejudicial and we do not think it worthy of serious discussion. It is, therefore, overruled.

The eighth assignment of error was withdrawn. The ninth assignment of error is without merit and is overruled. The tenth and eleventh assignments are also without merit.

This brings us to the consideration of the instructions.

There is evidence in the record which proves or tends to prove that defendant in error was engaged at the time of the accident by which he was injured as a railway mail, or postal, clerk on the route between Rosslyn and Leesburg, in the State of Virginia; that he had been in the service about twenty years, and had been employed upon the line upon which he was injured since April, 1896; that in the first years of his employment the railway was operated as a part of the Southern Railway, but was afterwards acquired by the Washington and Old Dominion Railway, which had installed electricity as its motive power over a part of the road. It appears that the postal car was equipped in accordance with the instructions and regulations of the United States Post Office Department; that on each side of the car there was a door through which the mail was received and delivered at the several stations; and that across these side doors there was an iron bar called a catcher and safety bar. There is evidence which tends to prove that the car was lighted by lamps,

that the lamps were in bad condition and were insufficient and inadequate to light the car in a satisfactory manner; that the condition of these lamps had been reported; that on the evening immediately before the accident the plaintiff observed that three of the lamp chimneys were broken; that he got off the car and went to the office and asked the man in charge to send him lamp chimneys, but the chimneys were not sent.

The plaintiff, as a witness in his own behalf, thus describes the situation as the car was about to leave upon the trip upon which he received the injuries: He says that he rode to the station from which the car was to leave on a wagon that transferred the mail to the Washington and Old Dominion company; that he got on the wagon and received his mail and rode over with it on the wagon; that when he got off the wagon into the car the bar was in the door; that he took in the mail; that the colored man threw it in and he dragged it from the door; that he then went forward and went to work on his mail, working over his letter case and labeling up his sacks and was very busy at work; that the man that took charge of the car came in to clean the car up; that he said to witness, "I am going to take this thing out of here; it is in my way;" that witness turned to him and said, "What thing?" and he said, "This bar here; it is in my way;" that witness said, "Well, be sure and put it back;" that the last thing that witness remembered about the bar was that he heard him say, "I cannot get it out;" that witness did not go to that door any more after he got into the car until he fell out of it; that there is a second dispatch of mail that comes over just before the train pulls out; that the train pulls out as soon as that is thrown in; and that one of the porters pulls it in and when they get out the train goes on.

There is, as we have seen, a door upon each side of the car. It so happened that the mail to be delivered at sev-

eral intervening stations before the accident occurred was delivered from the side of the car from which the safety bar had not been removed; but when they got to Wiehle the plaintiff went to the door, leaned out to make observations preparatory to discharging the mail, and by reason of the absence of the catcher bar lost his balance and fell or was jostled from the car, and received the injuries for which he sues.

The jury were rightly instructed upon the theory that the plaintiff was a passenger and as such it was the duty of the railroad to exercise the highest degree of care for his safety. The first instruction, therefore, on behalf of the defendant in error, was properly given.

The fifth instruction asked for by the defendant in error was properly given, and the second, third and fourth will be considered along with instructions asked for by plaintiff in error.

We think that the evidence shows that the car, before the trip upon which the accident occurred commenced, was equipped in accordance with the regulations of the United States Post Office Department. It seems to have been in all respects just in the condition in which it had been for a great many years before, during which time the defendant in error had been employed as postal clerk and in the performance of his duties upon the line of road between Rosslyn and Leesburg. It appears from his own testimony that he knew of the removal of the bar and acquiesced in its removal—at least, it is certain that he did not forbid it. That he required a promise from the man who removed it, that it would be at once restored, does not affect the case. The man who removed the bar was not acting in the line of his duty and could not bind the company in that behalf by his acts or declarations, and if the defendant in error saw fit to rely upon his promise, he did so at his own peril. If the safety bar had

not been removed this accident would not have happened, and its removal was beyond question the proximate cause of the injury which is the subject of this suit.

It is said that the car was improperly lighted. Let it be conceded. The insufficiency of the means to light the car was well known to the defendant in error, and the insufficiency of the light was, of course, obvious to him.

In *Recker* v. *Southern Ry. Co.*, 115 Va. 201, 78 S. E. 580, it is said: "To attempt to operate a dangerous machine in the dark or without sufficient light is such an open and obvious risk that no prudent person would encounter the peril. When an employee is injured under such circumstances, he cannot escape the result of his own contributory negligence upon the ground that he was acting on the orders of the master when obedience to those orders involves exposure to such apparent danger that no prudent person would incur the risk."

That is a stronger case than the one before us. Here there was no order given by the master, and the risk was open and obvious. In our view of the case, however, the presence or absence of the light is not material, for that was not the proximate cause of the accident. The proximate cause was the removal of the safety bar with the knowledge and consent of the defendant in error, in reliance upon the promise of the employee to restore it. It was removed without authority upon the part of the company, and the promise of restoration could not be relied upon, as we have already said, because not made by one who had authority to act for or in behalf of the company.

Without going into an extended discussion of what seems to us a case so plain as not to need discussion, we are of opinion that the court erred in granting instructions Nos. 2, 3 and 4 on behalf of the defendant in error, and in refusing to grant instruction No. 10 as asked for. That instruction reads as follows:

"If you find from the evidence that the plaintiff authorized the witness Kennedy to remove the mail grab on the car used by him, then you are instructed as matter of law that your verdict must be for the defendant."

The court amended that instruction so as to read as follows: "If you find upon the evidence that the plaintiff authorized the witness Kennedy to remove the mail grab on the car used by him, then you are instructed as matter of law that your verdict must be for the defendant, unless the jury further believe from the evidence that the plaintiff understood and believed that the said mail grab would be replaced before the leaving of the car."

As we have already said, the defendant in error had no right to rely upon the promise of the employee who removed the mail grab to restore it, and in doing so he acted at his own peril.

We think that the first and fifth instructions given at the instance of defendant in error, and the instructions given by the court, except instruction 4 which undertook to amend instruction 10 as asked for by plaintiff in error, were quite sufficient to aid the jury in the discharge of its duties.

For the granting by the court of instructions Nos. 2, 3 and 4, as requested by defendant in error, and for its refusal to grant instruction No. 10 as requested by plaintiff in error, and amending and giving it as instruction No. 4 of the court's instructions, the judgment of the circuit court must be reversed, the verdict set aside and the cause remanded to be further proceeded with in accordance with the views herein expressed.

*Reversed.*